Bernard Ryan P. J.
This claim, which is to recover for the value of certain land lying in Suffolk County appropriated by the State of New York pursuant to section 30 of the Highway Law, was filed June 3, 1959. By virtue of a statement of readiness filed with the Clerk of the Court of Claims by the Attorney-General on June 15, 1959 and at the same time served upon the claimant’s attorney, the claim appeared upon the Trial Calendar as calendar No. 378 for the New York Term of court opening January 11, 1960. Because of its position on the Trial Calendar this claim could not be reached for trial during the Winter Term, which has just ended. For that reason, although this motion was initiated soon after the opening of the term, the court has deemed the matter not so urgent as to require summary disposition. Instead it has withheld decision until opportunity was afforded for research and deliberation and the exposition of views which we believe the situation merits.
Application is made by claimant’s attorney for an order ‘1 vacating and setting aside the Notice of Examination Before Trial of the claimant, Edwin J. Dresner, dated January 18, 1960, and for such other and further relief as may be just and proper.” The examination which this court is asked to forestall is proposed in a notice directed to the claimant’s attorney given by the Attorney-General pursuant to provisions of subdivision 1 of section 17 of the Court of Claims Act. It required the claimant to appear at the office of the Attorney-General at a given date ‘ ‘ for the purpose of being sworn and examined under oath with respect to the above entitled claim against the State of New York, and that he (they) bring with him (them) all books, records and documents which pertain in any way to the above entitled claim. ’ ’
Subdivision 1 of section 17 of the Court of Claims Act reads as follows: “ § 17. Examinations before trial. 1. By the state. The attorney-general, upon five days’ notice to the attorney for the claimant or to the claimant if there be no attorney, may require any person filing a notice of claim for any cause whatever against the state tó be sworn before him or one of his deputies or assistants within the county of the claimant’s residence, relating to such claim, and when so sworn, to answer orally as to any facts relative to the justness of such claim. Whenever any claim for the appropriation of property is pending or has been determined in the court of claims and the *973 attorney-general is required by law to examine the title of the claimant thereto, prior to the payment of an award, the attorney-general may require such claimant to be sworn before him or one of his deputies or assistants within the county of the claimant’s residence * * * relating to such title, and when so sworn, to answer orally as to any facts relative to the title of such property. The attorney-general may also require such claimant to file with him an aEdavit stating any material facts relating to such title. Wilful false swearing before the attorney-general or his deputy or assistant is perjury and punishable as such. ’ ’
It is obvious from the language of the notice, from the requirement that all books, records and documents which pertain in any way to the claim, that the Attorney-General has proceeded under the first sentence of the statute hereinabove quoted and not from any desire or objective of clearing up questions of title prior to the payment of any award as provided by the second sentence thereof. This is a claim to recover the value of lands taken by eminent domain. Until very recently examinations before trial in such claims were unheard of. However, it has been determined that an appropriation claim presents a valid area for such an examination. (Fitzgerald v. State of New York, 5 A D 2d 3 [1957].) The distinction between the authority granted by the two sentences of the statute was therein stated by the Per Curiam opinion of the Appellate Division, Supreme Court, Third Department. By this motion claimant’s attorney is not disputing the validity of a notice of examination before trial in an appropriation case as approved by the Fitzgerald decision. This motion is addressed to the timeliness of the Attorney-General’s action in this particular instance. It is based upon the facts in the record which are (1) that the Attorney-General filed and served a statement of readiness. (2) That the claimant accepted it whereas he could have rejected it by moving within 10 days to vacate it and (3) that the claim has appeared upon the Trial Calendar for two distinct terms of this court and twice on calendar call at the opening of the term the Attorney-General has announced his readiness for trial.
In aid of a more complete understanding of the situation presented upon this motion it is necessary to review the history of the Court of Claims Buies of Practice and to recite briefly a chronology of events. Prior to 1956 the Buies of the Court of Claims required that the Clerk of the court should prepare a calendar for each regular term of the court of all claims which were filed in his ofiee at Albany at least 30 davs before the commencement of the term for which the calendar was made up *974 (former rule 3). They also required that the Attorney-General should serve notice of trial upon the attorney for the claimant in each claim appearing upon the printed calendar and that the date of issue was the date of filing of the claim in the Clerk’s office. Thus the practice was that a claim once filed automatically appeared upon the calendar of the court where it remained until it was tried or otherwise disposed of. Each calendar, for whatever term, thus presented claims in the chronological order of their filing, their assigned serial number in sequence. Several years prior to 1956 the Attorney-General desisted the practice of serving the notice of trial as required by the rules and relied upon the mailing of the calendar by the Clerk to each attorney of record for claimants. At each succeeding calendar call many claims for one reason or another, and often by consent, were put over the term. There grew up a great backlog of claims which attorneys, for reasons known best to themselves, did not press for trial but which, nevertheless, maintained their positions at the front of the calendar to the consternation, confusion and hindrance of attorneys representing claims of more recent filing. As the State’s program of building public works expanded, filings of claims multiplied rapidly. The court was confronted with the problem of keeping its calendars current.
In the Spring of 1956, after consultation with the deputy in charge of the claims and Litigation Bureau of the Attorney-General’s office, the Presiding Judge of this court proposed that the rules be revised to provide for a Trial Calendar and a General Calendar; claims, when filed, were to be docketed on the General Calendar and were to be placed upon the Trial Calendar only upon the filing of a statement of readiness by one or both parties. The objective was to bring term calendars up to date. It was reasonably assumed that attorneys who had confidence in the merits of their claims would seek early trials and, as a corollary, that those who continued dilatory practices and constantly offered excuses for putting their.claims over the terms had little trust or confidence in their ultimate success and that such claims would ultimately be abandoned.
The proposed changes in the rules were submitted in writing to the members of the court, some of whom expressed their views in an exchange of correspondence. Others were of the opinion that the matter should have fuller discussion at a round-table conference. A committee of three Judges was named to consider these proposals and revisions of other rules as well and ultimately on August 27, 1957 revised rules 3 and 4 were adopted, effective December 1, 1957. By the revisions provision was made for a Trial and a General Calendar to be governed by *975 a statement of readiness filed and served by one or both parties. In the alternative they could file a stipulation stating that the claim was ready for trial.
Although the proposals differentiating between the General and the Trial Calendar and for defining a statement of readiness were first advanced by the Presiding Judge in June of 1958, the effective date of the new rules was almost 18 months later. In the elapsed period of time the following actions occurred: By order of the Supreme Court, Appellate Division, First Department, a certificate of readiness rule, dated October 15, 1956, effective December, 1956, was adopted by New York and Bronx Counties. (See N. Y. L. J., Nov. 5, 1956, p. 1, col 4.) In the Supreme Court, Appellate Division, Second Department, a certificate of readiness rule was adopted in December, 1956, effective January 15, 1957. In the Supreme Court, Appellate Division, Third Department, a certificate of readiness rule was adopted November 15, 1956, effective January 1, 1957. In the Supreme Court, Appellate Division, Fourth Department, a certificate of readiness rule was adopted, effective July 1, 1957. In the United States District Court, Eastern District of New York, rule 1, similar to a statement of readiness rule, was adopted effective March 1,1957. And in the United States District Court, Southern District of New York, rule 5 similar to a statement of readiness rule, was adopted effective January 1,1960.
The objectives of such rules are obvious. Their effectiveness in bringing Trial Calendars up to date and relieving congested dockets of dead and abandoned issues depends upon the manner of their employment by practitioners. In this court the following occurred: At the call of the calendar for the New York Term which opened January 20, 1958, of the 387 listed cases 114 were reported not ready for trial. These were put over the term, removed from the Trial Calendar and placed on the General Calendar. Interest was suspended in interest bearing-cases. The Trial Calendar was thus reduced to a realistic presentation of ready business. By the opening of the next New York Term, September 8, 1958, 50 of the 114 cases had been restored to the Trial Calendar by the filing of statements of readiness, 5 by claimants’ attorneys, 44 by the Attorney-General, and one had been cross-filed. And by the opening of the following term, January 19,1959, an additional 47 of the said 114 had been restored to the Trial Calendar by statements of readiness, of which only 7 had been filed by claimants’ attorneys, 3 had been cross-filed and the remainder, 37, had been filed by the Attorney-General only.
*976 It was not, of course, the intent of the new rules to deprive any claimant of his day in court. But, as in other tribunals, the heavy dockets of this court cannot be cleared by permitting indulgence in delaying tactics. If it was the considered judgment of those responsible for defending the State of New York that the repose of any claim on the General Calendar might handicap the defense by the lapse of time and the possible nonavailability of witnesses by reason of death, retirement, or other removal from the scene, a simple remedy was available by a motion to dismiss for lack of prosecution. This procedure could have brought to the attention of the court those claims in which reasonable excuse for a postponement of a trial could be demonstrated and which deserved retention on the Trial Calendar. The sound exercise of the court’s discretion in such matters has recently been upheld. (Turcich v. State of New York, 11 A D 2d 844.) Such a course was in fact suggested by this writer.
An instance of what we regard as a misapplication of the rule occurred while this motion has been sub judice. Within a month after the return date of the motion herein attorneys for a claimant in three claims, unrelated to this one, moved for an examination before trial of the State’s employees. One of these claims had been filed on July 24, 1959 and, by virtue of a statement of readiness filed and served by the Attorney-General November 10, 1959, was listed upon the same Trial Calendar as was this claim, viz., New York Term, January 11, 1960. The other two were not so listed. Upon the return day of the motion the Attorney-General appeared and consented to the examination. This court granted the order but at the same time directed that the claim already filed be stricken from the Trial Calendar. Yet on the very day that the order granting the examination was entered the Attorney-General filed statements of readiness in the two claims which, up to that date, were only on the General Calendar but which were included in the order for the examination (Bronxville Palmer, Ltd. v. State of New York, Claim Nos. 36855, 37145, 37146. No opinion filed or available for publication). Upon being made aware of this action we directed, upon our own motion, that all three claims be held on the General Calendar to await the completion of the examination before trial and until further order herein.
We now turn the other side of the coin. The next instance of conflict of practice with the intent and objective of the rule to come to this writer’s attention occurred at the recent May Term of court at Buffalo. A claim filed December 29, 1959 appeared as No. 125 on the Buffalo calendar by virtue of a *977 statement of readiness by the Attorney-General filed and served February 2,1960. An application on behalf of the claimant for an order directing an examination before trial of the agent and employees of the State Division of State Police and certain agents or employees of the State of New York Crime Commission was opposed by the Attorney-General. He invoked the provision of rule 4 that if a motion to vacate the statement of readiness be not made within 10 days after the filing and service thereof the opposing party or parties shall be deemed ready for trial. This court sustained the position of the Attorney-General and denied the motion for examination. (Levitch v. State of New York, 23 Misc 2d 979.)
While the court has had this matter sub judice several other instances of applications for examinations before trial or other preliminary procedures in claims already appearing upon Trial Calendars by virtue of statements of readiness already filed have come before members of the court other than this writer. In some instances the applications have been denied and in others they have been granted with sanctions, as, for example, a requirement that the examination be conducted ‘ ‘ with all convenient speed.” It is the belief of this writer that in all such instances the claim should be stricken from the Trial Calendar and withheld from it until such time as the court is satisfied that all necessary and proper proceedings have been completed. If this measure seems drastic it nevertheless appears necessary to effectuate the objectives envisioned by the revision of the rules.
We regret that we have found it necessary to engage in this extended discourse. It is, however, more to be regretted that well-intended and considered attempts to produce a workable Trial Calendar, and to advance cases truly ready for trial over stale and nonmeritorious claims, have been thwarted by the practice of rushing to file a statement of readiness a few days or a few weeks after the filing of the claim. Such a brief lapse of time as occurred in this instance —12 days — is the more remarkable when considered in the light of experience. We recall reports to us by trial assistants of the need of more time to complete appraisals, to prepare surveys,* to examine cost accounts, or to procure medical experts, in various claims depending upon the nature of the litigation.
It is for these reasons that, after extended deliberation, we have considered it not only proper, but necessary to review the history of the rule, its operations and its application by practitioners. It may be that the rule should be repealed and the former practice of listing all claims on a single calendar in *978 sequential order of their filing restored. However, the amendment to rule 3 adopted February 1, 1960 may assist in clearing our dockets of stale and abandoned claims and should, perhaps, be given a further trial. This amendment provides as follows: ‘ ‘ A claim which has been transferred from the Trial Calendar to the General Calendar and not restored to the Trial Calendar within one year thereafter shall be deemed abandoned and be dismissed in the manner provided for the dismissal of abandoned cases in the Supreme Court and County Courts, pursuant to rule 302, subd. 2, of the Rules of Civil Practice.”
All of the foregoing leads to the conclusion that if the claimant appeared here opposing an application for an examination before trial pursuant to the Rules of Civil Practice his position would be well taken and the court would be authorized in its discretion to deny such application. This motion, however, is for an order vacating and setting aside a notice of examination given by the Attorney-General under the provision of the first sentence of section 17 of the Court of Claims Act. The question arises: Is the authority given to the Attorney-General by the statute absolute or is it subject to restriction by this court under the circumstances presented?
While this writer has had the matter under consideration the question has been answered by our esteemed colleague, Judge Hunt, who in a similar situation granted a claimant’s motion for an order vacating the Attorney-General’s demand for a bill of particulars and his notice of examination before trial. (Senez v. State of New York, 23 Misc 2d 936.) In doing so he followed the interpretation of certificates of readiness rules in the First Department in two instances. (Finn v. McLaren, 14 Misc 2d 743 [1958]; Price v. Brody, 7 A D 2d 204 [1959].) We concur in Judge Hunt’s decision on the issue.
It should, perhaps, be noted that subdivision 1 of section 17 of the Court of Claims Act is derived from former section 264 of the Code of Civil Procedure, seventh, eighth, ninth and tenth sentences and was continued by chapter 922 of the Laws of 1920, which set up the Court of Claims Act and became section 23 thereof. Subdivision 2, providing for examinations before trial by a claimant, was not added to the act until chapter 860 of the Laws of 1939. Perhaps, too, it could be argued that, by virtue of its age, subdivision 1 has some special sanctity. But a broader view would be that it was a precursor to the legislative authorization of examinations before trial by all parties. Thus, like other provisional remedies, it should be considered to be under the direction of the court. In this particular instance the *979 Attorney-General has not only circumscribed his actions by filing a statement of readiness but in addition, at the calendar call for the New York Term of this court commencing September 14, 1959, he reported that he was ready for trial and this position he repeated at the calendar call at the term opening January 11, 1960. Yet he served notice of the proposed examination some 10 days later.
There is another good although technical ground for granting the order to vacate. The notice requires the claimant, Edwin J. Dresner, to attend before Robert Schwartz, Assistant Attorney-General of the State of New York at Room 1205, 270 Broadway, Borough of Manhattan., As the verified claim discloses that the claimant is a resident of the County of Queens and not of the County of New York it is obvious that the notice does not comply with the statute quoted hereinabove. However, reliance on that ground alone would likely result in the issuance of a new notice designating the proper county as the venue for Mr. Dresner’s appearance.
In conclusion, the circumstances call for action by the court to exercise its sound discretion. The motion to vacate and set aside the notice for examination is granted. The case shall continue on the Trial Calendar in its present position. Enter order accordingly.